UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  FEB 26 2019  ★

BROOKLYN OFFICE

-------------------------------------------------------- X

**THERESA JOHNSON,**  :

          Plaintiff,  :

                    :

      - against -  :

**NANCY A. BERRYHILL**, Acting  :
Commissioner of Social Security,

          Defendant.  :

-------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**
18-CV-00927 (AMD)

**ANN M. DONNELLY,** United States District Judge:

The plaintiff, Theresa Johnson, brings this action appealing the Commissioner of Social Security's decision that she is not disabled for purposes of receiving Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act. For the reasons that follow, I grant the plaintiff's motion for judgment on the pleadings, deny the Commissioner's cross-motion, and remand the case for further proceedings.

## BACKGROUND

On August 11, 2014, the plaintiff applied for SSI with an onset date of November 30, 2013 (Tr. 239-44), alleging disability because of depression, anxiety, bipolar disorder, anemia, and high blood pressure. (Tr. 152, 260.) On November 1, 2016, Administrative Law Judge ("ALJ") David Tobias held a hearing, at which the plaintiff and a vocational expert testified. (Tr. 117.) In a January 13, 2017 decision, the ALJ found that the plaintiff had severe impairments of dysthymic disorder, depressive disorder, and bipolar disorder, but that she was not disabled because her impairments—individually, or in combination—were not severe enough to meet or medically equal the criteria listed in the Social Security regulations. (Tr. 166–70, 176.) The ALJ determined that the plaintiff had the residual functional capacity ("RFC") to perform a full range

1

of work at all exertional levels, except that her work had to be "low stress," could not "involve more than occasional, superficial interaction[s] with coworkers or the public," or require her "to carry out complex tasks or instructions." (Tr. 170-71.) ALJ Tobias concluded that the plaintiff could not return to her prior jobs as a child monitor and grounds keeper, but that she could perform other jobs that existed in the national economy. (Tr. 175-76.)

On December 11, 2017, the Appeals Council denied the plaintiff's request for review (Tr. 1-6), and the plaintiff appealed on February 12, 2018. (ECF No. 1.) Both parties moved for judgment on the pleadings. (ECF Nos. 12-1, 15.)

## DISCUSSION

A district court reviewing a final decision of the Commissioner "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C. §405(g). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted). A district court should remand the case when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004).

ALJ Tobias held a hearing on the plaintiff's application for benefits and reviewed the plaintiff's medical records, including the records of the psychiatric treatment by Dr. Sonea Mahboob, who concluded that the plaintiff had a marked loss in her ability to deal with stress of

2

work and complete a normal workweek without interruption, and would be absent from work "more than 3 times a month." (Tr. 407–08.) The ALJ decided that the doctor's opinion was entitled to little weight because it was "not supported by treatment records and [was] largely conclusory in nature." (Tr. 173.) The plaintiff challenges that decision, and maintains that the ALJ should have given controlling weight to Dr. Mahboob's opinion. (ECF No. 12-1 at 10). For the reasons that follow, I remand the case for the ALJ to reconsider Dr. Mahboob's opinion and explain his decision.

"The 'treating physician' rule requires that the opinion of a claimant's treating physician be accorded 'controlling weight' if it is well supported and not inconsistent with other substantial evidence in the record." *Corporan v. Comm'r of Soc. Sec.*, No. 12–CV–6704, 2015 WL 321832, at *4 (S.D.N.Y. Jan. 23, 2015) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); 20 C.F.R. § 404.1527(c)(2). The reason for this rule is that the treating physician is the "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective . . . that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." 20 C.F.R. § 416.927(c)(2); *see Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011). Application of the treating physician rule is especially important in cases where the claimant's mental health is at issue; "the longitudinal relationship between a mental health patient and her treating physician provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative examination." *Bodden v. Colvin*, No. 14–CV–8731, 2015 WL 8757129, at *9 (S.D.N.Y. Dec. 14, 2015); *see Richardson v. Astrue*, No. 09–CV–1841, 2009 WL 4793994, at *7 (S.D.N.Y. Dec. 14, 2009) ("When examining psychiatric or

psychological evidence, it is important that greater weight be given to those physicians who have a 'relationship' with the patient.").

An ALJ who decides that the treating physician's opinion should not be given controlling weight must "comprehensively set forth his [or her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (internal quotation marks omitted); 20 C.F.R. § 404.1527(c)(2). In determining whether a treating source's opinion warrants controlling weight, the ALJ must consider: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see Burgess*, 537 F.3d at 129. "Failure to provide 'good reasons' for not crediting" a treating physician's opinion constitutes grounds for remand. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (quoting *Schaal v. Apfel*, 134 F.3d 496, 505) (internal quotation marks omitted); *see Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion.").

Dr. Mahboob, a psychiatrist at the Interfaith Medical Center, saw the plaintiff for the first time in December of 2013, when the WeCare Program[1] referred her for "emotional disturbances." (Tr. 406, 412.) The doctor continued to treat her through the November 2016 hearing. (*Id.*) At the first visit, Dr. Mahboob reported that the plaintiff was sad and depressed, had an "irritable mood, poor appetite, [and] poor concentration," and felt "overwhelmed taking care of 'everyone;'" she "cried intermittently and said that she often use[s] crying as a way to

---

[1] WeCare is a New York City–sponsored program that serves public assistance clients who have medical or psychological issues.

cope." (Tr. 412–14.) The doctor prescribed psychotherapy and Wellbutrin, an antidepressant. (*Id.*) At the September 15, 2014 visit, although the plaintiff was "coping well," the doctor prescribed Trazodone, a different antidepressant, to treat the plaintiff's "labile mood." (Tr. 374.) On December 17, 2015, Dr. Mahboob diagnosed the plaintiff with chronic bipolar disorder, for which she prescribed a new antipsychotic drug, and continued her on antidepressants. (Tr. 431–32.) Dr. Mahboob confirmed this diagnosis on May 11, 2016, and renewed the plaintiff's prescriptions. (Tr. 441.) The doctor noted that the plaintiff "reports to be coping well with [her] daily . . . regimen," but that her memory had "slowed." (*Id.*)

On July 15, 2016, Dr. Mahboob submitted a medical source statement in which she noted that the plaintiff suffered from "mood disturbance," "emotional lability," "paranoia or inappropriate suspiciousness," and "social withdrawal or isolation." (Tr. 406.) In Dr. Mahboob's opinion, the plaintiff would be absent from work "more than 3 times a month" because of these impairments. (Tr. 407.) The plaintiff had a marked loss in her ability to "maintain attention and concentration for extended periods," "maintain regular attendance and be punctual," "sustain an ordinary routine without special supervision," "deal with stress of semi–skilled and skilled work," "complete a normal workday or workweek without interruptions from psychologically based symptoms," and "perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 408.) The plaintiff would have moderate difficulties "maintaining social functioning," and frequent "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner," as well as repeated "episodes of deterioration or decompensation in work." (Tr. 409–10.)

The ALJ assigned little weight to Dr. Mahboob's medical source statement, concluding that it was "not supported by treatment records and [was] largely conclusory in nature." (Tr.

173.) ALJ Tobias also found that Dr. Mahboob's opinion was inconsistent with "recent mental status examinations [that] showed that the claimant was well related and cooperative" (*id.*); he did not identify the examinations to which he was referring. Nor did he explain why the plaintiff's seeming cooperation at her examination was inconsistent with the inability to maintain a regular work schedule. (Tr. 408.) The ALJ cited Dr. Mahboob's observation that "the claimant's memory was normal and her thought content was logical" as inconsistent with her ultimate diagnosis, but did not explain why. (Tr. 173.)

Moreover, substantial evidence in the record—including the conclusions of other professionals—supports Dr. Mahboob's opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Tanner v. Colvin*, No. 10-CV-1308, 2014 WL 2215762, at *5 (N.D.N.Y. May 28, 2014). In August of 2014, psychiatrist Dr. Richard Storch saw the plaintiff, and noted that she was "tearful throughout the visit" and seemed to be "conflicted and tense with a sad mood and affect;" she was "unkempt" and was not eating or sleeping much. (Tr. 372.) According to notes taken during another examination, the plaintiff's depression and anxiety affected her physical condition, and "emotional factors contribute[d] to the severity of [her] symptoms and functional limitation." (Tr. 343–44.) The plaintiff was "incapable of performing even 'low stress' work," and could sit, stand, or walk for less than two hours in an eight hour workday (Tr. 344, 346); the plaintiff would be "off-task" 25% or more of a typical workday, when her symptoms were "likely [to] be severe enough to interfere with attention and concentration needed to perform even simple work tasks" (Tr. 346).

Ms. Lawford Smith, the plaintiff's treating social worker, saw her weekly beginning in December of 2013; her observations—made two years before Dr. Mahboob's medical source statement—are similar to Dr. Mahboob's. In Ms. Smith's view, the plaintiff was "overwhelmed,"

6

and her symptoms included "frequent crying," a "depressed mood, irritable feelings, [and] poor concentration;" the plaintiff also had "difficulty thinking or concentrating," "persistent disturbances of mood or affect," and "emotional withdrawal or isolation." (Tr. 337–38.) The plaintiff was "seriously limited"[2] in the following areas: (1) her ability to maintain regular attendance and an ordinary routine; (2) work in coordination or proximity to others; (3) complete a normal workday or week without interruptions; (4) perform at a consistent pace; (5) get along with co-workers or peers; (6) respond appropriately to changes in a routine work setting; (7) deal with normal work stress; (8) understand, remember and carry out detailed instructions; and (9) deal with stress of semiskilled or skilled work. (Tr. 339–40.) Moreover, the plaintiff found numerous work demands stressful, including "working on a schedule," "completing tasks," and working a full day. (Tr. 341–42.) Ms. Smith believed that the plaintiff would, on average, be absent from work "more than four days a month," and would "not be able to function in a standard work environment." (Tr. 341.) In short, Ms. Smith and Dr. Mahboob came to similar conclusions about the plaintiff's ability to work on a regular and continuing basis.[3] (Tr. 337-42, 405-10.) Accordingly, remand is required.

The plaintiff also objects to the ALJ's evaluation of Dr. John Miller, a consulting psychiatrist who examined the plaintiff only once, and concluded that she had no limitations to

---

[2] "Seriously limited" is a "noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the work day or work week." (Tr. 339.)

[3] ALJ Tobias accorded "less weight" to Ms. Smith's opinion because she was "not an acceptable medical source," and because her opinion was "inconsistent" with the record. (Tr. 172.) On remand, the ALJ should reevaluate his conclusions about Ms. Smith's opinion. 20 C.F.R. § 404.1513; *see* SSR 06–03p (non-medical sources work closely with the claimants and "have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time."). A social worker's opinion, though not of an "acceptable medical source" under 20 C.F.R. § 404.1513(a), is "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06–03p; *see Pogozelski v. Barnhart*, No. 03–CV–2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should . . . have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant").

maintain a regular work schedule and deal with stress; the ALJ gave greater weight to Dr. Miller's opinion than Dr. Mahboob's opinion. According to Dr. Miller, the plaintiff complained of "recurring depressive episodes . . . , crying spells, feelings of hopelessness, irritability, and social withdrawal." (Tr. 400.) Dr. Miller observed that the plaintiff had "excessive apprehension and worry," "no friends," and "difficulty relating with others and coping with stress." (Tr. 401–02.) Nevertheless, Dr. Miller found that the plaintiff had "no limitation in her ability to . . . relate adequately with others and deal appropriately with stress," "to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, [and] make appropriate decisions." (Tr. 402.) ALJ Tobias accorded some weight to Dr. Miller's opinion, but did not explain why, other than to say that Dr. Miller's opinion was "based on a complete mental examination." (Tr. 173). That explanation is not enough to justify the decision to afford greater weight to a consultative examiner's opinion. *See Floyd v. Colvin*, No. 13–CV–4963, 2015 WL 2091871, at *8 (E.D.N.Y. May 5, 2015) (The ALJ did not adequately explain why he accorded significant weight to the opinion of a non-treating physician, who examined the plaintiff once.). A complete explanation is particularly important in these circumstances, since Dr. Miller's ultimate conclusion is not entirely consistent with his descriptions of the plaintiff's condition.

On remand, the ALJ should reconsider his assessment of Dr. Mahboob's and Dr. Miller's opinions. If he finds that Dr. Mahboob's opinion is not entitled to controlling weight, he should set forth the reasoning behind that decision. After weighing the medical source opinions, the ALJ should reconsider the plaintiff's RFC in light of all of the relevant medical and other evidence in the record.

## CONCLUSION

Accordingly, the plaintiff's motion for judgment on the pleadings is granted, the

Commissioner's cross-motion is denied, and the case is remanded for further proceedings

consistent with this opinion.

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
      February 26, 2019